IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KALLEMEYN COLLISION CENTER, INC.**, directly and as an assignee of Kevin Karl and Jennifer Karl, and **JEFF KALLEMEYN**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE STANDARD FIRE INSURANCE COMPANY** and **THE TRAVELERS INDEMNITY COMPANY**,<br><br>Defendants. | Case No. 21 C 6004<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court grants in part and denies in part Defendants The Standard Fire Insurance Company and The Travelers Indemnity Company's Motion to Dismiss (Dkt. No. 10).

### I. BACKGROUND

On September 29, 2021, Plaintiffs Kallemeyn Collision Center, Inc., and Jeff Kallemeyn initiated this lawsuit in Illinois state court. The Complaint alleges that Kallemeyn Collision Center, Inc. ("Kallemeyn Collision") is an automotive collision-repair business in Cook County, Illinois, and that Plaintiff Jeff Kallemeyn is the president and owner of the company. (Compl. ¶¶ 1–2, Not. of Removal, Ex. 1, Dkt. No. 1-1.) Defendants The Standard Fire Insurance Company and Travelers Indemnity Company are insurance

company affiliates who sell insurance policies under the trade name "Travelers." (*Id.* ¶¶ 3-4.)

Third-parties Kevin and Jennifer Karl (the "Karls") purchased Travelers insurance for their 2014 Honda Pilot EX automobile, which was operating in force on January 4, 2021. (*Id.* ¶¶ 5–7.) The insurance covered direct and accidental loss caused by collision and was subject to a $250 deductible. (*Id.* ¶¶ 8–9.) On January 4, 2021, the Honda Pilot was damaged in a collision that was covered under the Travelers policy. (*Id.* ¶¶ 10–11.)

The Karls reported the collision to Travelers and made a claim, then took the car to Kallemeyn Collision for repairs on January 6, 2021. (*Id.* ¶¶ 12–13.) The repairs cost $8,119.43. (*Id.* ¶ 14.) Absent the deductible, the amount owed by Travelers was $7,869.43. (*Id.* ¶ 15.) Plaintiffs allege that Travelers refused to pay this amount and instead adjusted the claim based on unreasonably low labor rates. (*Id.* ¶¶ 16–17.) The Travelers policy does not state or limit labor rates, and Travelers had previously paid reasonable rates to Kallemeyn Collision. (*Id.* ¶¶ 21–33.) Nevertheless, Travelers refused to pay Kallemeyn's reasonable labor rates and underestimated and misclassified the remaining estimated labor times. (*Id.*) Travelers then represented to the Karls that Kallemeyn Collision's costs were exorbitant and fraudulent. (*Id.* ¶ 42.) As a result, the Karls refused to pay the

difference between Travelers' insurance coverage and the actual costs to repair the vehicle. (*Id.* ¶¶ 43–45.) Plaintiffs responded by asserting a possessory lien against the Honda Pilot. (*Id.* ¶ 46.)

The Karls then began a social-media campaign defaming and disparaging Plaintiffs in attempt to pressure Plaintiffs into releasing the vehicle, which included a blog post that reached more than 4,000 people in the local communities and dozens of yard signs throughout the neighborhood stating, "Kallemeyn SCAMS! Beware!" (*Id.* ¶¶ 47–51.) Plaintiffs allege that the Karls' defamatory statements about Kallemeyn Collision and Jeff Kallemeyn were the direct result of the false and defamatory statements made by Travelers to the Karls. (*Id.* ¶ 52.)

Anxious to stop the social media campaign and community signs, Plaintiffs entered into an agreement with the Karls that assigned the title and ownership of all claims the Karls have against Defendants under the payment of repair costs. (*Id.* ¶ 53.) Plaintiffs allege that Defendants are engaging in a pattern or practice of routinely under indemnifying Illinois consumers under its policies, including past and future customers of Kallemeyn Collision. (*Id.* ¶ 54.)

The Complaint contains nine counts: Breach of Contract, Bad Faith, Defamation *Per Se* as to both Plaintiffs, Common Law Commercial Disparagement, Violation of the Uniform Deceptive Trade

Practices Act, Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Tortious Interference with Contract, and Tortious Interference with Prospective Economic Advantage. (*Id.* ¶¶ 55–129.) On November 9, 2021, Defendants removed the case to federal court under 28 U.S.C § 1441. (Dkt. No. 1.) Defendants then filed a Motion to Dismiss Counts Two through Nine under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 10.)

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss challenges the sufficiency of the complaint and "dismissal of an action under this rule is warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007) (cleaned up). To overcome a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts alleged

- 4 -

and draws all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### III. DISCUSSION

Defendants contend that the only real issue before the Court is Count One, the breach of the insurance contract between the Karls and Defendants (the "Travelers" Policy), and that the remaining counts should be dismissed due to a lack of factual basis in the Complaint. The Court reviews the substantive law for each count.

#### A. Count Two: Bad Faith

The second count of the Complaint alleges bad faith under Section 155 of the Illinois Insurance Code. Section 155 allows for statutory damages and attorneys' fees in an insurance action where the insurance company either has not fully paid or has caused an unreasonable delay in settling a claim, and "it appears to the court that such action or delay is vexatious and unreasonable." 215 Ill. Comp. Stat. 5/155(1).

Defendants argue that the "vexatious and unreasonable" language creates a higher pleading standard under *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 200 F.3d 1102 (7th Cir. 2000). In *Citizens First*, the Seventh Circuit reviewed a bench trial by this Court regarding an officers and directors liability policy for a rural bank. *Id.* at 1104. After

the trial, this Court awarded the bank $4.9 million under the policy, along with attorneys' fees as a sanction for the insurer for avoiding payment. *Id.*

The Seventh Circuit affirmed in part, reversed in part, and remanded the case. *Id.* at 1111. As to the award of attorneys' fees under Section 155, the Seventh Circuit held that the fees "may not be awarded simply because an insurer takes an unsuccessful position in litigation, but only where the evidence shows that the insurer's behavior was willful and without reasonable cause." *Id.* at 1110 (citing *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299, 1305 (Ill. App. Ct. 1993). The Seventh Circuit found this Court's post-trial findings insufficient to satisfy this standard. *Id.*

While the Court agrees this that the award of attorneys' fees under Section 155 requires evidence of willful conduct, it is premature to apply a factual evidentiary standard to the pleading stage. Here, Count One of the Complaint alleges that Standard Fire had previously paid market rate costs under similar Travelers policies and then willfully and unreasonably refused to pay fair labor market prices under the Karl's Travelers insurance policy. These basic facts are similar to the ones in *Valdovinos v. Gallant Ins. Co.*, 733 N.E.2d 886, 889 (Ill. App. Ct. 2000). There, the Illinois Appellate Court reversed a lower court who declined to award attorneys' fees and penalties under Section 155. The

plaintiff in that case sued his insurance provider for only paying part of the damages for his vehicle after submitting a claim. The Illinois Appellate Court reasoned that "[t]here was no *bona fide* dispute over the cost of the repairs, and defendant's brief initial investigation revealed the plaintiff's claim was not fraudulent." *Id.* at 890. Therefore, the insurance company's refusal to pay the full cost of the damage to plaintiff's vehicle constituted willful, unreasonable behavior under Section 155. *Id.*

In reply, Defendants quibble with the factual comparison to the two cases, arguing, for example, that in *Valdovinos*, the insurance company was mostly unresponsive while Defendants provided a reasonable response to Plaintiff's claim. (Reply at 4–5, Dkt. No. 23.) The Court will not decide this question prior to the close of discovery and the filing of dispositive motions. While Plaintiffs must develop the evidence beyond allegations for trial, and the Court finds the facts alleged in the Complaint sufficient to state a claim under the Illinois Insurance Code.

**B. Counts Three and Four: Defamation *Per Se***

Plaintiffs allege that Defendants defamed both the company Kallemeyn Collision and Jeff Kallemeyn personally. Specifically, Plaintiffs allege that Standard Fire defamed both entities to the Karls, which caused the Karls to defame Plaintiffs widely.

To state a defamation claim under Illinois law, a plaintiff must "present facts showing the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Defendants argue that none of the elements can be met under the circumstances described by Plaintiffs.

First, Defendants argue that the false and defamatory statements that Defendants said to the Karls, as alleged by Plaintiffs, were not described with enough particularity to state a claim. A complaint for defamation *per se* does not require Plaintiffs to plead exact words spoken, but the substance must be stated with "sufficient precision and particularity so as to permit initial judicial review of its defamatory content . . . [and] so that the defendant may properly formulate an answer and identify any potential affirmative defenses." *Id.*

Plaintiffs allege the following in the Complaint:

> 43. Upon information and belief, when the Karls complained to Travelers about the insurer's refusal to pay the difference in repair costs, Travelers falsely represented to the Karls that Kallemeyn Collision's charges, including Kallemeyn Collision's labor rates, were exorbitant, unethical, and fraudulent.
>
> [. . .]
>
> 84. Travelers has committed defamation per se under Illinois law as the statements made to the Karls impute that Kallemeyn Collision has a want of integrity because it misrepresents the cost of collision repairs and

> systematically overcharges consumers and insurance companies for collision repairs by inflating the labor rates Kallemeyn Collision charges for its services.
>
> [. . .]
>
> 90. Travelers has committed defamation per se under Illinois law as the statements Travelers made to the Karls, and that the Karls then published to other third parties, impute that Jeff Kallemeyn has a want of integrity as the owner and manager of Kallemeyn Collision because Kallemeyn Collision misrepresented the cost of collision repairs and systematically overcharges customers and insurance companies for collision repairs.

(Compl. ¶¶ 43, 84, 90.) Defendants additionally argue that, because Plaintiffs plead based on "information and belief," Plaintiffs must also state "the facts upon which the belief is founded." (Mot. at 10 (quoting *Keen v. Bluestar Energy Servs., Inc.*, No. 11 C 7754, 2012 WL 1118215, at *5 (N.D. Ill. Mar. 30, 2012)).) As a result, Defendants argue that Plaintiffs' allegations regarding what the Karls stated to the community at large cannot be imputed back to the Karls' conversation with Defendants without undue speculation.

Plaintiffs disagree that it is speculation to attribute the origin of Karls' defamatory statements to Defendants. In the conversations with Defendants regarding the insurance reimbursement, Defendants refused to adjust the claim based on Kallemeyn Collision's labor rates and explanation of expenses. (Compl. ¶ 32, *see also* 2/15/2021 Email, Compl., Ex. F, Dkt. No. 1-1.) After Plaintiffs refused to release the vehicle to the Karls without full payment, the Karls posted comments on social media

stating, *inter alia*, "Kallemeyn Collision is a body shop in Lemont. [T]hey are currently holding my vehicle hostage and conducting unethical business practices. Jeff Kallemeyn is trying to charge labor rates in excess of $155/hr. whereas the market rate is $85/hr." (Facebook Screenshot, Compl., Ex. G., Dkt. No. 1-1.) Plaintiffs argue that it is reasonable to believe that the Karls' statements were from representations made by Defendants regarding the market rate for labor costs, since this claim is almost identical to one of the labor rates in dispute on the Karls' automobile. (*See* Compl. ¶¶ 23—25 ("In July 2020, Travelers adjusted and paid a collision claim involving mechanical repairs for a[n] [unrelated] vehicle repaired by Kallemeyn Collision based on a labor rate of $156.00/unit. Travelers adjusted the Karls' claim based on a mechanical labor rate of $85.00/unit. Travelers refused to pay Kallemeyn Collision's reasonable mechanical labor rate of $156.00/unit.".))

The Court agrees that Plaintiffs have pled sufficient facts to show why Plaintiffs believe the defamation has originated from Defendants. Defendants are not unrelated third parties based on unsupported conjecture; they are the only other parties besides Plaintiffs privy to the specific labor disputes at issue. This provides a basis for Plaintiffs to believe that Defendants are the source of information. In their reply, Defendants continue to argue

that it is necessary for the Complaint to "state the actual words it claims Travelers used." (Reply at 7.) This misstates the law. As long as Plaintiffs' Complaint "sets forth the substance of those statements with sufficient specific precision and particularity so as to permit both initial judicial review and the formulation of an answer and potential defenses," the Complaint is properly pled. *Green*, 917 N.E.2d at 459. Defendants may object to the asserted facts upon which Plaintiffs belief depends in their answer, but at this point in the proceedings there is a factual basis for Plaintiffs' belief.

Accordingly, the Court next reviews whether the allegations are specific enough for the Court to perform an initial judicial review. There are five categories of statements that are considered defamatory *per se*: "(1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication." *Van Horne v. Muller*, 705 N.E.2d 898, 903 (1998). Defendants do not seriously contend that the alleged statements made by Defendants and then by the Karls would not prejudice the business of Kallemeyn and Kallemeyn Collision,

relegating a vague First Amendment protest to a footnote. (Mot. at 6 n.1, Dkt. No. 15.) Similarly, the Court finds these statements are specific enough for Defendants to be on notice of the defamation claims and draft an answer.

Defendants next object that Plaintiffs have failed to state a claim based on the second prong under Illinois law, which requires that "the defendant made an *unprivileged* publication of that statement to a third party." *Green*, 917 N.E.2d at 459(emphasis added). Defendants argue that communications between an insurance company and its customers are privileged under *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 619 N.E.2d 129 (Ill. 1993).

In *Kuwik,* the trial court granted summary judgment for the defendants on a libel case, and the decision was appealed to the Illinois Supreme Court. *Id.* That Court held that, under Illinois defamation law, a qualified privilege exists "based on the policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Id.* at 133. Without qualified privilege, the plaintiff only needs to show that the defendant was negligent; the presence of qualified privilege requires the plaintiff to prove that "the defendant either intentionally published the material while knowing the matter was false or displayed a reckless

disregard as to the matter's falseness." *Id.* The presence of a qualified privilege is a question of law. *Id.*

The Illinois Supreme Court adopted the Restatement (Second) of Torts and directed courts to look "only to the occasion itself for the communication and determine [ ] as a matter of law and general policy whether the occasion required some recognized duty or interest to make the communication so as to make it privileged." *Id.* at 134. The defendant has the burden of proving the qualified privilege exists. *Id.*

There are three broad categories of communications that create qualified privilege. *Id.* The first two, "situations in which some interest of the person who publishes the defamatory matter is involved," and "situations in which some interest of the person to whom the matter is published . . . is involved," are implicated here. *Id.* It is clear that Defendants would have an interest in performing its contractual obligation to reimburse the Karls, and that the Karls would have a reciprocal interest in reaping the benefit of the contract. *C.f. DePinto v. Sherwin-Williams Co.*, 776 F.Supp.2d 796, 805 (N.D. Ill. 2011) ("Sherwin-Williams had an interest in performing its contractual obligation [and] Pulte . . . had an interest in receiving a usable product . . . These facts are sufficient to establish that a qualified privilege exists.").

To overcome the privilege, Plaintiffs must allege that the statements were not just untrue, but that "the defendant abused the privilege by intentionally publishing false material or by displaying a "reckless disregard" as to its truth or falsity." *Tamburo v. Dworkin*, 974 F.Supp.2d 1199, 1214 (N.D. Ill. 2013). In their complaint, Plaintiffs plead that Defendants "intentionally or negligently published" false statements. (Compl. ¶¶ 83, 88.) Although barred from pleading a negligent defamation claim, Plaintiffs may plead that Defendants intentionally published false statements. In light of the qualified privilege, the claim is not dismissed but instead goes "into the hands of the jury to be determined as questions of fact as to whether the privilege was abused." *Kuwik*, 619 N.E.2d at 134. While there may certain scenarios in which Plaintiffs will be unable to prove an abuse of privilege as a matter of law after the record is developed, it is premature at the pleading stage to make any further determinations as Plaintiffs' allegations of intentional falsehoods.

Finally, Defendants argue that, even if the alleged defamatory statements were published to the Karls, it is impossible, as a matter of law, for Defendants to be responsible for what the Karls restated to the public at large. This Court finds the liability of the original defamatory speaker to be a somewhat undeveloped area of Illinois law. Nevertheless, in 2012,

an Illinois appellate court adopted the Restatement (Second) of Torts, which states, "[t]he publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if, . . . (c) the repetition was reasonably expected." *Tunca v. Painter,* 965 N.E.2d 1237, 1261 (Ill. App. Ct. 2012). In other words, "one who makes a defamatory statement should be held liable for the reasonably foreseeable consequences of his actions, namely, when he should have known that there was an unreasonable risk that his statement would be republished." *Id.* Because this is the only recent caselaw on the subject, the Court follows the appellate court's determination and assumes that the Illinois Supreme Court would also adopt this standard.

In *Tunca*, Plaintiff Tunca, a surgeon who specializes in gynecological oncology, filed a complaint alleging that Defendants Painter and Conway, doctors at the same hospital, stated that Tunca had "negligently and inadvertently severed [a] patient's artery." *Id.* at 1242. The Illinois Appellate Court took note that these statements were stated loudly in public hallways of the hospital such that the statements were "widely disseminated among all those who were present and within earshot of his comments, as well as to others, including doctors who were not present at the time the comments were made." *Id.* at 1245. As a result, several third-party

doctors stopped referring patients to Tunca. *Id.* at 1259. The Illinois Appellate Court held that, with these allegations, the "natural and probable consequences of each doctor's statements was that it would be repeated to other doctors in that hospital." *Id.* at 1263.

To come to that conclusion, however, the Illinois Appellate Court relied heavily on the public nature of the comments made by Defendants within the hospital. Here, however, the statements were spoken within a private context to the beneficiaries of the insurance contract. Taking all the facts alleged as true, there is no reason that Defendants would expect the Karls to republish widely information regarding the specifics of a dispute between an insurance company and a car repair shop. As a result, the Plaintiffs have a defamation cause of action as to Defendants stating to *the Karls* that Plaintiffs were overcharging on labor costs (subject to the qualified privilege determination above), but Plaintiffs cannot extend the damages from the defamatory action to the Karls' subsequent independent decision to launch a social media campaign and post signs around the community deriding Plaintiffs' businesses.

    C.  **Commercial Disparagement – Count Five, Six, and Seven**

Defendants next challenge Plaintiffs' counts relating to common law commercial disparagement and the statutory claims under

the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Practices Act") and the Illinois Consumer Fraud and Business Practices Act ("Consumer Fraud Act"). These three counts rest on the same premise, and Defendants move to dismiss them all.

The common law tort of commercial disparagement requires the same analysis as statutory disparagement under the Deceptive Practices Act. *Evanger's Cat & Dog Food Co., Inc. v. Thixton*, 412 F.Supp.3d 889, 903 (N.D. Ill. 2019). Under both the commercial disparagement and the Deceptive Practices Act, the plaintiff must plead that the defendant "published untrue or misleading statements that disparaged the plaintiff's goods or services." *Id.* (quoting *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F.Supp.3d 926, 939 (N.D. Ill. 2019). These must be false statements of fact and not expressions of opinion. *Id.*

Here, Plaintiffs allege that Defendants told the Karls that Plaintiffs defrauds consumers and insurance companies by charging $156 per hour instead of going market rate of $85 per hour. (Compl. ¶ 93, 100—01.) As pointed out by Defendants, these statements do not disparage the quality of Plaintiffs' goods or services, only Plaintiffs' integrity for charging overly high prices. Plaintiffs point out that this section of the Complaint has language which alleges Defendants behavior "call[s] into question the *quality* and integrity of Kallemeyn Collision's collision-repair services," and

thus argue they have properly pled these two counts. (Compl. ¶ 93 (emphasis added).) However, Plaintiffs have not alleged any additional false statements of fact relating to quality of goods or services at issue that would support that conclusory allegation. For these reasons, both Counts are dismissed.

The Court next turns to the Consumer Fraud Act claim. The elements under the Act are "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).

Defendants move to dismiss this claim on the basis that it is preempted by Section 155 of the Illinois Insurance Code. In *Cramer v. Insurance Exchange Agency*, the Illinois Supreme Court held that "Section 155 does not preempt a claim of insurer misconduct based on a separate and independent tort. Mere allegations of bad faith or unreasonable and vexatious conduct, however, are not sufficient to constitute a separate and independent tort." 675 N.E.2d 897, 905-06 (Ill. 1996).

In 2004, the Illinois Appellate Court applied the holding in *Cramer* in the context of an alleged breach of insurance contract

and determined that, because there were no additional facts beyond what was pled under the breach of contract count and subsequent damages under Section 155 of the Illinois Insurance Code for vexatious conduct, there was no foundation for a separate and independent tort action. *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 757–58 (Ill. App. Ct. 2004). In that case, "irrespective of a statutory remedy, the existence of a contractual remedy . . . made the tort theory unnecessary." *Id.* at 757 (quoting *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1132 (Ill. 2001). The conduct pled under the Section 155 count and under the Consumer Fraud Act count are essentially identical. (*See* Compl. ¶¶ 72, 109.) The Court therefore finds that there is no separate and independent basis for a Consumer Fraud Act tort. Accordingly, the Court grants the Motion to Dismiss as to Counts Five, Six, and Seven.

### D. Tortious Interference with Contract and Prospective Economic Advantage – Counts Eight and Nine

Finally, Defendants move to dismiss the two tortious interference claims. Like the Consumer Fraud Act count, Defendants argue that the underlying factual allegations are covered by the breach of contract count and the vexatious conduct count under Section 155, citing again to *Cramer v. Insurance Exchange Agency*, 675 N.E.2d 897 (Ill. 1996). The Court concurs. Like Count Seven, the remaining counts allege the same underlying conduct of Defendants' alleged unwillingness to pay the costs of the repairs

(Counts One and Two) and the alleged defamation of Plaintiffs to the Karls in response to the Karls' understandable anxiety in not having their automobile costs covered (Counts Three and Four). To the extent that Plaintiffs wish to use the Karls' social media campaign and other conduct as an additional basis for these torts, the Court holds that Defendants cannot be held responsible for independent third-party actions. Because there is no independent basis for Counts Eight and Nine, they are properly dismissed.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. denies the Motion to Dismiss Count Two;

2. denies in part and grants in part the Motion to Dismiss Counts Three and Four, and;

3. grants the Motion to Dismiss Counts Five, Six, Seven, Eight, and Nine.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 9/14/2022